Atlas CopCo Tools, Inc. v. Air Power Tool & Hoist, Inc.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-145-CV

ATLAS COPCO TOOLS, INC. APPELLANT

V.

AIR POWER TOOL & HOIST, INC. APPELLEE

------------

FROM THE 342
ND
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  I
NTRODUCTION

Appellant 
Atlas Copco Tools, Inc. 
manufactures and sells industrial tools throughout the United States, primarily through regional distributors.  Beginning in 1994, appellee 
Air Power Tool & Hoist, Inc. 
became one of appellant’s nonexclusive authorized distributors within parts of Texas and Louisiana.  In May 2000, appellant appointed another Texas distributor, Tooling Technologies, L.L.C., by executing a nonexclusive distribution agreement, which included beneficial provisions that appellee’s agreement did not contain.  Soon after, appellant began assigning customers between the two distributors.  In September of 2000, a new contract was negotiated between appellant and appellee. Appellee felt it was coerced into signing the new agreement, which ceded large, existing customers to Tooling Technologies.  During late 2000, appellant began receiving service complaints from its Motor Vehicle Industry (“MVI”) customers, which purchased the more complex electrical tools as opposed to basic pneumatic “air powered” tools.  As a result, in late 2000 and early 2001, appellant assigned all of appellee’s MVI accounts to Tooling Technologies.  Appellee felt it was forced to agree to these changes.  Appellant notified appellee’s “reassigned” customers by email. 

On April 4, 2001, appellee filed suit against appellant and Tooling Technologies  
for anticompetitive practices under Section 15.05 of the Texas Free Enterprise and Antitrust Act (“TFEAA”), false promise of future performance, business disparagement, tortious interference with prospective relationships, fraud and constructive fraud, misrepresentation of confidential information, and negligent or intentional misrepresentation. 
 The trial court granted summary judgment for Tooling Technologies on all claims against it.  

At trial, the jury found that (1) appellant engaged in “a contract, combination or conspiracy in restraint of trade” and that such action was “willful and flagrant” under the TFEAA; (2) appellant disparaged the business or reputation of appellee; and (3) appellant breached the relationship of trust and confidence that existed between appellant and appellee.  Based on the jury’s findings, the trial court awarded appellee $700,000, which it trebled pursuant to the finding of willful or flagrant conduct under the TFEAA to $2,100,000, attorney’s fees in the amount of $123,761.56, and court costs in the amount of $9,160.60.  After the trial court denied appellant’s motion for judgment notwithstanding the verdict and motion for new trial, this appeal followed.  We reverse and render.  

II.
  
S
UFFICIENCY
 
OF
 
THE 
E
VIDENCE
 
S
UPPORTING
 
D
AMAGES 

In its seventh issue, appellant argues that the evidence was legally and factually insufficient to support the jury’s award of damages.  Here, because appellee bore the burden of proof at trial, we will address appellant’s legal sufficiency complaint as a “no evidence” issue.
  See Gooch v. Am. Sling Co., 
902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no writ.).  
In determining a “no-evidence” issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary.  
Bradford v. Vento, 
48 S.W.3d 749, 754 (Tex. 2001)
; Cont’l Coffee Prods. Co. v. Cazarez, 
937 S.W.2d 444, 450 (Tex. 1996);
 In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cazarez,
 937 S.W.2d at 450;
 Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002).

A “no-evidence” issue may only be sustained when the record discloses one of the following:  (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez,
 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)),
 cert. denied
, 526 U.S. 1040 (1999).
 

A
 
party seeking to recover lost profits must prove the loss through competent evidence with reasonable certainty. 
 Szczepanik v. First S. Trust Co.
, 883 S.W.2d 648, 649 (Tex. 1994); 
VingCard A.S. v. Merrimac Hospitality Sys., Inc.
, 59 S.W.3d 847, 863 (Tex. App.—Fort Worth 2001, no pet.).  While this test is a flexible one in order to accommodate the myriad circumstances in which claims for lost profits arise, at a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. 
 
Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.
, 877 S.W.2d 276, 279 (Tex. 1994); 
Szczepanik
, 883 S.W.2d at 649; 
VingCard A.S.
, 59 S.W.3d at 863.   In other words, “reasonable certainty” is not demonstrated when the profits claimed to be lost are largely speculative or a mere hope for success, as from an activity dependent on uncertain or changing market conditions, on chancy business opportunities, or on promotion of untested products or entry into unknown or unproven enterprises.  
Teletron Energy Mgmt., Inc.
, 877 S.W.2d at 279-80; 
VingCard A.S.
, 59 S.W.3d at 863. 

Here, over 
objections of appellant lodged before, during, and after trial, the trial court permitted appellee to present the testimony of its damages expert, Janet Collinsworth.  Collinsworth’s testimony was the only evidence presented by appellee as to the amount of its purported damages.  Collinsworth presented alternative damage models of “lost profits” and “injury to corporate goodwill,” of $2,239,450 and $2,283,202 respectively, which were both premised on projections of lost profits from the sales of appellant’s products for nearly six years, or through 2006.

In the lost profits model, Collinsworth simply totaled lost profits from 2001, the year of termination, through 2006 arising from projected lost sales of appellant’s products, and discounted the total to present value.  In the goodwill model, Collinsworth ran her profit projections through a pro forma income statement, then totaled up the projected cash flow over six years, added a “terminal value” representing projected cash flow for an indefinite period thereafter, discounted the totals to present value, and then compared the results to similar projections assuming no appellant sales.  These projections, however, ignored the terms of the agreement, the facts of the case, and Texas law regarding the calculation of lost profits.

A.  Terms of the Agreement

The evidence conclusively established that appellee had no right to sell appellant’s products except for their agreement.  The September 1, 2000 agreement in effect at the time appellee filed suit in April 2001 provided that it would remain in effect for one year and would automatically renew for additional one-year terms, unless either party provided forty-five days prior written notice.  It also allowed either party to terminate the agreement without cause upon sixty days written notice. 
 Appellant sent appellee such a termination letter effective October 15, 2001.  Moreover, appellee’s principals testified that shortly after a March 2001 meeting at which appellant told them to stop selling to MVI accounts, they decided to no longer honor their obligations under the agreement. 

 
In 
United Way of San Antonio, Inc. v. Helping Hands Lifeline Foundation
, 
Inc.
, Helping Hands, a former affiliate of the United Way, brought suit against the United Way for breach of contract and business disparagement.  949 S.W.2d 707, 711 (Tex. App.—San Antonio 1997, writ denied).
(footnote: 1)  At trial, the court allowed Helping Hands to present expert testimony regarding damages based on lost funding for a period of ten to twenty years, despite the fact that pursuant to the agreement between the parties, such funding was renewable on a yearly basis, was entirely within the discretion of the United Way, and there were no guarantees Helping Hands would receive the funding each year.  
Id
.  After reviewing cases involving proof of lost profits by for-profit entities, the court of appeals held that the expert testimony did not support the excessive damage award calculated over the ten to twenty year period because “the mere hope of funding renewable at the discretion of another party will not support recovery of any future funds the other party could withhold at its discretion,” and “Helping Hands’ expectation of renewal of funding in light of the United Way’s prior warnings were at best hopeful; ‘in reality, they were little more than wishful.’” 
 Id
. at 711-12 (quoting 
Tex. Instruments
, 877 S.W.2d at 280).

Here
, Collinsworth’s projections were no more than wishful; she conceded she ignored the terms of the agreement when measuring lost profits over a six-year period.  At trial, Collinsworth testified that in deciding what time frame to use, “[t]he contract was not an issue for [her]” and she “did not consider [the termination] letter to be relevant.”  In selecting six years as opposed to some other period, she simply said that, “2006 was, I felt, a long enough time frame to get a snapshot of [appellee’s] value over time.”  She added that the time frame was “consistent” with conversations she had with two individuals who owned “similar all tool distributorships,” who had told her “if you did what you were supposed to do, you could expect a long-term relationship.”  Collinsworth further testified that there was “no specific document [she could] point to” in selecting the time frame.  Moreover, Collinsworth did no projections of damages for a sixty-day period, or through September 1, 2001 (the end of the contractual one-year term), or through October 15, 2001 (the date of actual termination).   

Appellee argues that because the agreement was renewable and no notice to terminate was provided before the suit was filed, Collinsworth could aptly rely upon the agreement as a valid, subsisting agreement with expectations of automatic renewals when she made her calculations. Primarily, this argument fails because Collinsworth testified that she did not consider the terms of the agreement at all in calculating her lost profit projections.  Additionally, considering the terms of the agreement and the deterioration of the parties’ business relationship prior to the suit, appellee and its expert could not have had a reasonable expectation of continued sales of appellant’s products.     

Appellee also contends that because its damages sound in tort, appellant cannot take advantage of a contractual limitation on damages. In effect, appellee argues that lost profit damages not recoverable in a contract action because they are speculative nevertheless are recoverable under other legal theories.  However, no case so holds.  The cases cited by appellee concern situations where third parties have sought to escape tortious interference liability pursuant to terms of the contracts they were alleged to have interfered with.  
See, e.g., Juliette Fowler Homes, Inc. v. Welch Assocs
., 793 S.W.2d 660, 666 (Tex. 1990); 
Sterner v. Marathon Oil Co.
, 767 S.W.2d 686, 689 (Tex. 1989).  Here, appellant is not a third-party tortfeasor seeking to limit tort damages based on some limitation in a contract to which it was not a party.  The only damages claimed in this case by appellee are damages flowing from its contractual status as appellant’s distributor.  Therefore, appellant is not seeking to take advantage of some “contractual limitation” on damages. 

While Collinsworth’s speculation that the agreement would have perpetually renewed over a six year period was at odds with the terms of the agreement and the evidence presented regarding the relationship between the parties, the use of the six-year period was not the only deficiency in Collinsworth’s testimony.

B.  Facts of the Case

Collinsworth’s projections also included lost profits from sales to customers that appellee decided to stop selling to or relinquish, that were not part of appellee’s territory under the agreement, and that refused to purchase appellant’s products through appellee due to dissatisfaction with appellee’s service.  Additionally,  Collinsworth projected a dramatic increase in appellee’s sales of appellant’s products over the six-year period that had no relation to established results, but were based on one record year and the unsubstantiated projections received from appellee’s owner, who did not testify regarding his projections.  This was plainly improper. 
See VingCard
, 59 S.W.3d at 864 (holding lost profit projections were properly based on the plaintiff’s existing market and client base and established sales record). 

C.  Calculating Lost Profits Under Texas Law 
     

Finally, Collinsworth incorrectly calculated net profits by measuring lost gross profits, not lost net profits, as the law requires.  
See Holt Atherton Indus. v. Heine, 
835 S.W.2d 80, 83 n.1 (Tex. 1992) 
(holding proper measure of damages is lost net profits).  “Net profits” are defined as “what remains in the conduct of business after deducting from its total receipts all of the expenses incurred in carrying on the business.”  
Turner v. PV Int’l
, 765 S.W.2d 455, 456 (Tex. App.—Dallas 1998, pet. denied).  Here, Collinsworth testified she deducted only the “incremental costs of selling the tools” and not other expenses incurred in carrying on the business of appellee.   

III.  C
ONCLUSION 

As discussed above,  Collinsworth’s testimony was based on speculation and conjecture, and, at times, directly contradicted the evidence in this case and Texas law.  In sum, we find her testimony and the data she based it on fall short of the legal requirement that lost profits be proven by competent evidence with reasonable certainty.  Moreover, since the only evidence supporting appellee’s damages award lacked probative value and constituted “no evidence,” appellee failed to establish lost profits as a matter of law.
(footnote: 2)  
Schaefer v. Tex. Emp. Ins. Ass’n
, 612 S.W.2d 199, 204-05 (Tex. 1980);
 Capital Metro. Transp. Auth. v. Cent. of Tenn. Ry. & Navigation Co.
, 114 S.W.3d 573, 582 (Tex. App.—Austin 2003, no pet.);
 Naegeli Transp. v. Gulf Electoquip, Inc.,
 853 S.W.2d 737, 741 (Tex. App.—Houston [14
th
 Dist.] 1993, writ denied)
.  Therefore, we sustain appellant’s seventh issue. 
 In light of our decision, we need not address appellant’s remaining issues on appeal.  
See 
Tex. R. App. P.
 47.1.  Having sustained appellant’s no-evidence issue, it is our duty to render judgment for appellant because that is the judgment the trial court should have rendered. 
 See 
Tex. R. App. P.
 43.3;
 Vista Chevorelt, Inc. v. Lewis
, 709 S.W.2d 176, 176 (Tex. 1986); 
Nat’l Life & Accident Ins. Co. v. Blagg
, 438 S.W.2d 905, 909 (Tex. 1969).
  Thus, we reverse the trial court’s judgment and render judgment that appellee take nothing. 

SAM J. DAY

JUSTICE

PANEL B:     HOLMAN and GARDNER, JJ.; and SAM J. DAY, J. (Retired, Sitting by Assignment)

DELIVERED:  JANUARY 22, 2004 

FOOTNOTES
1: Appellee argues 
United Way of San Antonio
 is distinguishable on the facts from this case in that Helping Hands had received several warnings concerning future funding, had failed to follow probationary conditions, had not taken advantage of available multi-year funding, and the contract was not renewable. We do not agree.  Appellee was aware that it was not providing satisfactory service to its MVI customers and had agreed to a one year renewable contract that allowed a no-cause sixty-day termination.  Moreover, the case clearly states that Helping Hand’s funding agreement was renewable.  
United Way of San Antonio
, 949 S.W.2d at 711. 

2: While the jury awarded appellee $700,000 in actual damages as opposed to 
$2,239,450 and $2,283,202, which Collinsworth testified they lost, 
it is clear that the jury relied to some extent on her testimony in that no other evidence was presented as to damages.  Moreover, since appellee’s net operating income was $42,338 for 1999 and $55,248 for 2000 and appellant’s products accounted for only twenty percent of appellee’s total sales, only by placing weight on Collinsworth’s highly speculative calculations could the jury have concluded that $700,000 was an appropriate award.