NUMBER 13-04-180-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

HYPEROAM, INC.,                                                   Appellant,

 

                                           v.

 

VALLEY
WIRELESS INTERNET,                                    Appellee.

 

 

 

                  On appeal from the 370th
District Court

                           of Hidalgo
County, Texas.

 

 

 

                     MEMORANDUM OPINION[1]

 

              Before Justices Rodriguez,
Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








The underlying matter involves a claim for breach of
contract relating to the provision of internet services.  Appellee, Valley Wireless Internet
("Valley Wireless"), filed a traditional motion for summary judgment
which was taken under submission.  On
January 13, 2004, the trial court entered an order affirming summary judgment
in favor of Valley Wireless.  Appellant,
Hyperoam, Inc., ("Hyperoam"), failed to file any response to the
motion for summary judgment.

Hyperoam, in its timely filed motion for new trial,
contended that the judgment should be set aside because the Craddock
factors[2]
were satisfied, and because evidence as to damages was legally and factually
insufficient.  Hyperoam's motion for new
trial was overruled by operation of law. 
Hyperoam brings this appeal, contending the trial court (1) erred
procedurally in failing to grant its motion for new trial, and (2) erred
substantively by awarding damages that are excessive and unsupported by the
evidence.  We affirm in part, reverse in
part, and remand for further proceedings.

I.  Background








The underlying breach of contract case was filed by
Valley Wireless in October 2002, and Hyperoam timely filed a general
denial.  Hyperoam's attorney subsequently
withdrew as counsel, with the court's permission.  Pursuant to court order, all future pleadings
and correspondence were forwarded directly to Hyperoam's representative, Albert
Salas, unless and until new counsel were retained on behalf of Hyperoam.  Requests for disclosure were forwarded in
February 2003; other discovery requests were subsequently forwarded, including
requests for admissions.  No responses
were provided to any of the discovery requests; the requests for admission were
deemed admitted on or about October 11, 2003. 
See Tex. R. Civ. P.
198.2(c).  

In November 2003, Valley Wireless filed a
traditional motion for summary judgment, contending that no genuine issues of
fact existed as to its claim for breach of contract or its alternative claim
for quantum meruit.  Valley Wireless
tendered evidence that included (1) a copy of the contract in issue, (2) a copy
of the deemed admissions,[3]
and (3) the affidavit of Nora Quintanilla, president of Valley Wireless.[4]  Deemed admissions included, among others, the
following:  (1) the contract attached was
a true and correct copy, signed by both parties; (2) Valley Wireless paid the
$10,000 fee called for under the contract for the exclusive selling rights for
the Hyperoam internet services; (3) Hyperoam never provided the training called
for under the contract to enable Valley Wireless to properly recommend services
and identify qualified customers; (4) Hyperoam never paid to Valley Wireless
the commissions identified in the contract for the number of customers Valley Wireless
signed to Hyperoam internet contracts; and (5) Hyperoam never permitted Valley
Wireless to actively promote or distribute Hyperoam's internet services.  













The affidavit of Quintanilla states that (1) she
signed the contract on behalf of Valley Wireless and observed the signing by
Hyperoam, (2) Valley Wireless tendered the required exclusivity fee of $10,000
to Hyperoam, (3) Valley Wireless tendered performance by making itself
available to perform and by expending an additional $10,000 to create the
necessary infrastructure (including offices, telephones and other equipment) to
perform under the contract by marketing and selling Hyperoam internet services,[5]
(4) Hyperoam failed to perform, and (5) Valley Wireless suffered damages due to
the breach of contract.  The affidavit
relates Quintanilla's efforts to market the internet services, and that
Hyperoam failed to provide either training or technical support.  Quintanilla states she "entered into
discussions with several potential customers who were prepared to enter into
contracts for Hyperoam's services," including several major business
clients and many individuals.  She does
not relate that any contracts were actually signed with customers.[6]
 Quintanilla understood that, under the
contract, Valley Wireless would receive commissions from the monthly service
fee.  As to private customers, she
calculated contract damages to Valley Wireless for the first year based upon
the number of anticipated subscribers ("the number of individuals who were
prepared to contract for Hyperoam's services"), and then multiplied that
number by the number of months and the commission percentage.  She then estimated an average 25percent
increase in business on a yearly basis, and calculated damages for a second
year.  With respect to commercial
customers, Quintanilla calculated damages presuming that each individual
employed by the City of Pharr and every student enrolled at the University of
Texas Pan-American and Texas Southmost College would be included in the
calculation of revenue from internet services. 
She applied the same presumed 25 percent increase for the second year of
the contract, and calculated that Valley Wireless sustained a total of
$4,043,052.00 in lost profits damages.[7]


The motion for summary judgment and a notice of the
submission date of December 9, 2003, were forwarded November 13 and 14, 2003,
for service upon Salas, as representative of Hyperoam.  Hyperoam did not (1) file a motion for
continuance or a motion for leave to file an untimely response or (2) respond
to the motion for summary judgment.  A final
summary judgment order was entered on January 13, 2004, awarding to Valley
Wireless all of the claimed damages as well as attorneys' fees in the amount of
$9,592.50, for a total judgment of $4,072,644.50.  The day after the judgment was entered, Hyperoam
filed its motion for new trial.[8]








The motion for new trial, as well as argument in
this appeal, asserts that the proper standard to determine whether or not
Hyperoam's motion for new trial should have been granted is that set forth in Craddock
v. Sunshine Bus Lines, Inc., 133 S.W.2d 124, 126 (Tex. 1939).  The motion for new trial addressed each of the
Craddock prongs.  It reflects that
Salas was ill with cancer of the throat and mouth, and had difficulty speaking,
swallowing and breathing during the time the lawsuit was on-going.  He was in and out of hospitals and ultimately
had surgery to remove portions of his throat and palate.  Because of his medical problems, Salas could
not work or return phone calls, and frequently did not review his mail in a
timely manner.  Hyperoam further contends
that during this time its offices were moved and the post office did not
properly forward its mail, such that the motion for summary judgment and notice
of hearing were not received until the Wednesday before Thanksgiving (November
26, 2003).  Hyperoam therefore contends
that any failure to appear or answer the summary judgment was not due to any
conscious indifference or fault of Salas, and was not intentional. 








The motion for new trial also asserts a meritorious
defense as to liability, attaching an affidavit of Salas reflecting that
Hyperoam performed its obligations and provided $50,000 in equipment and
$20,000 in labor to Valley Wireless.  The
motion for new trial further addressed damages, claiming that the award was
excessive and evidence in support of the award was legally and factually
insufficient.  The motion further asserts
that evidence in the record did not support the judgment, and that the
affidavit of Quintanilla as to damages was without foundation, and based solely
upon speculation and unsupported assumptions. 
The motion also challenged the award of post-judgment interest at the
rate of ten percent, as in excess of that prescribed by Texas Finance Code
section 304.003(c)(2).  Tex. Fin. Code Ann. ' 304.002(c)(2) (Vernon Supp. 2004-05).  

II. Motion for New TrialBStandard of Review

A trial court has long been vested with great
discretion in ruling upon a motion for a new trial and, absent manifest abuse
of discretion, its action will not be disturbed on appeal.  Equitable General Ins. Co. v. Yates,
684 S.W.2d 669, 670 (Tex. 1984) (citing Neunhoffer v. State, 440 S.W.2d
395, 397 (Tex. Civ. App.BSan Antonio 1969, writ ref'd n.r.e.)).  The latitude of the trial court's discretion
is addressed in rule 320, which provides: 
"New trials may be granted and judgment set aside for good cause,
on motion or on the court's own motion on such terms as the court shall
direct."  Id. (citing Tex. R. Civ. P. 320).








In reviewing a trial court decision under an abuse
of discretion standard, we must determine whether the trial court acted without
reference to any guiding rules or principles.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  The exercise of discretion is within the sole
province of the trial court, and an appellate court may not substitute its
discretion for that of the trial judge.  Johnson
v. Fourth Ct. App., 700 S.W.2d 916, 918 (Tex. 1985).  An abuse of discretion occurs only when the
trial court reaches a decision that is "so arbitrary and unreasonable as
to amount to a clear and prejudicial error of law."  Id. at 917.  A trial court abuses its discretion if its
decision is arbitrary, unreasonable, and without reference to any guiding rules
and principles.  Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997). 
The judgment of the trial court will be affirmed if that judgment can be
upheld on any reasonable theory supported by the evidence.  Ex parte E.E.H., 869 S.W.2d 496,
497-98 (Tex. App.BHouston [1st Dist.] 1993, writ denied); Harris
County Dist. Attorney's Office v. Burns, 825 S.W.2d 198, 200 (Tex. App.BHouston [14th Dist.] 1992, writ denied).  We consider only the evidence most favorable
to the judgment, and if there is some evidence to support the judgment, we will
affirm.  State v. Knight, 813
S.W.2d 210, 211 (Tex. App.BHouston [14th Dist.] 1991, no writ).  

III.  Application of Craddock

Hyperoam contends that
the trial court erred in failing to grant its motion for new trial because it
satisfied all the elements of Craddock. 
Craddock, 133 S.W.2d at 126,
provides the guiding rule or principle for granting a motion for new trial
subsequent to entry of a default judgment: 

A default judgment should be set aside and a new
trial ordered in any case in which 1) the failure of the defendant to answer
before judgment was not intentional, or the result of conscious indifference on
his part, but was due to a mistake or accident; provided 2) the motion for a
new trial sets up a meritorious defense and 3) is filed at a time when the
granting thereof will occasion no delay or otherwise work an injury to the
plaintiff. 

 

Cliff v. Huggins, 724 S.W.2d 778, 779 (Tex. 1987) (citing Craddock, 133 S.W.2d
at 126).  A trial court abuses its
discretion if it denies a motion for new trial when the defendant satisfies the
Craddock standard.  See Old
Republic Ins. Co. v. Scott, 873 S.W.2d 381, 382 (Tex. 1994) (per curiam).  The same review also applies to a post-answer
default judgment.  Huggins, 724
S.W.2d at 779. 








However, whether Craddock
applies in the context of a summary judgment is a separate question.  In Carpenter v. Cimarron Hydrocarbons Corp.,
98 S.W.3d 682, 683 (Tex. 2002), the supreme court addressed a comparable
situation.  The plaintiff had failed to
respond to a motion for summary judgment, but did file a motion for leave to
file a later response and a motion to continue the scheduled summary judgment
hearing; those motions were denied by the trial court.  Id. at 683.  The plaintiff claimed it was error to deny
his motions, and also that the Craddock standard should be applied to
motions for new trial in this context.  Id.  The court stated:

We hold that Craddock
does not apply to a motion for new trial filed after summary judgment is
granted on a motion to which the nonmovant failed to timely respond when the
respondent had notice of the hearing and an opportunity to employ the means our
civil procedure rules make available to alter the deadlines Rule 166a
imposes.  In this case, the rules
provided the plaintiff an opportunity to obtain leave to file a late response
to the summary-judgment motion. 
Therefore the court of appeals erred in applying the equitable Craddock
standard to plaintiff's motion for new trial.

 

Carpenter, 98 S.W.3d at
683-84.  The court went on to hold that a
motion for leave to file a late summary judgment response should be granted
when good cause is shown.  Id. at
684.  








In the instant case,
no such motion was filed.  The record
before us does establish, by Salas's own affidavit, that the motion for summary
judgment was received by him in Hyperoam's offices at their new address the Wednesday
before Thanksgiving, at least two weeks prior to the submission date of the
motion.  Although Salas asserts he did
not receive notice of the submission or hearing date, there is evidence in the
record that the notice was mailed and that he received that notice.[9]  We conclude that sufficient evidence was
before the court, such that it did not abuse its discretion in concluding that
Hyperoam received notice of the submission date.  Salas himself states he attempted to contact
Hyperoam's former attorney, learned he had withdrawn from the representation of
Hyperoam, but took no further steps.  In
these circumstances, we cannot say that Hyperoam had no opportunity to
"employ the means our civil procedures rules make available to alter the
deadlines Rule 166a imposes."  Carpenter,
98 S.W.3d at 683-84.  We conclude that Craddock
does not apply, and there is no basis to grant the motion for new trial based
upon its standards.  We therefore
overrule the first portion of Hyperoam's issue on appeal.  

IV.  Legal or Factual Sufficiency of Evidence

to Support the Damages
Award 

 

Hyperoam also contends
that the trial court erred substantively in granting the motion for summary
judgment because the evidence is legally and factually insufficient to support
the damages award.  

 

A.  Standard of ReviewBSummary Judgment








The function of
summary judgment is to eliminate patently unmeritorious claims and defenses,
not to deprive litigants of the right to a jury trial.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 n.5 (Tex. 1979); Swilley v. Hughes, 488 S.W.2d 64,
68 (Tex. 1972); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.BCorpus Christi 2003,
no pet.).  On appeal, the standard of
review for the grant of a motion for summary judgment is determined by whether
the motion was brought on no‑evidence or traditional grounds.  See
Tex. R. Civ. P. 166a(i), (c); Alaniz, 105 S.W.3d at 344; Ortega
v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex. App.BCorpus Christi 2003,
no pet. h.) (op. on reh'g).

We review de novo a
trial court's grant or denial of a traditional motion for summary
judgment.  Id. at 345; Ortega,
97 S.W.3d at 771.  The movant bears the
burden of showing both no genuine issue of material fact and entitlement to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Alaniz,
105 S.W.3d at 345.  In deciding whether
there is a genuine issue of material fact, we take evidence favorable to the
non‑movant as true.  Alaniz,
105 S.W.3d at 345.  We make all
reasonable inferences and resolve all doubts in favor of the non‑movant.  Id. 
Summary judgment for a defendant is proper if the defendant disproves at
least one element of each of the plaintiff's claims or affirmatively establishes
each element of an affirmative defense to each claim.  Id. 
A non‑movant has the burden to respond to a traditional summary
judgment motion if the movant conclusively (1) establishes each element of its
cause of action or defense, or (2) negates at least one element of the non‑movant's
cause of action or defense.  Alaniz,
105 S.W.3d at 345; Ortega, 97 S.W.3d at 771. 

                                   A.  Legal Sufficiency








We address
legal-sufficiency challenges as either "no-evidence" or
"matter-of-law" issues.  Gooch v. Am. Sling Co., 902 S.W.2d 181,
183-84 (Tex. App.BFort Worth 1995, no
writ).  We analyze the issue as a
"no-evidence" challenge when the party complaining on appeal did not
bear the burden of proof at trial.  Id.
at 183.  In challenging the legal
sufficiency of the evidence to support a finding on which an adverse party bore
the burden of proof, the appellant must show the record presents no evidence to
support the adverse finding.  Croucher
v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). 


When the party
complaining on appeal of the legal sufficiency of the evidence to support a
finding bore the burden of proof at trial, we address the issue as a
"matter-of-law" challenge.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).  If, in reviewing a "matter-of-law"
challenge, we conclude that the record presents no evidence to support the
finding, we then examine the entire record to determine if a contrary proposition
is established as a matter of law.  Holley
v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Raw Hide Oil & Gas, Inc.
v. Maxus Exploration Co., 766 S.W.2d 264, 276 (Tex. App.BAmarillo 1988, writ
denied).  








In performing a legal
sufficiency review, we consider only the probative evidence and inferences that
support the challenged finding, disregarding all evidence and inferences to the
contrary.  Lenz v. Lenz, 79 S.W.3d
10, 19 (Tex. 2002); Maxus, 766 S.W.2d at 276.[10]  We overrule a legal sufficiency issue if the
record reflects any evidence of probative force to support the finding.  ACS Investors, Inc. v. McLaughlin, 943
S.W.2d 426, 430 (Tex. 1997).  We sustain
a legal sufficiency challenge when: (1) the record conclusively establishes the
complete absence of evidence of a vital fact, (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact, (3) the evidence offered to prove a vital fact is no more than a
mere scintilla, or (4) the evidence conclusively establishes the opposite of a
vital fact.  Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam); Merrell Dow Pharms.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Hines v. Comm'n for Lawyer
Discipline, 28 S.W.3d 697, 701 (Tex. App.BCorpus Christi 2000,
no pet.).  If there is more than a
scintilla of evidence to support the finding, the legal sufficiency challenge
fails.  Formosa Plastics Corp. USA v.
Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex.
1998). 








The evidence is no
more than a scintilla and, in legal effect, is no evidence "[w]hen the
evidence offered to prove a vital fact is so weak as to do no more than create
a mere surmise or suspicion of its existence."  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  Suspicion linked to
other suspicion produces only more suspicion, not some evidence.  Pitzner,106 S.W.3d at 727-28; Browning-Ferris, Inc.
v. Reyna,
865 S.W.2d 925, 928 (Tex. 1993). 
Similarly, an inference stacked only on other inferences is not legally
sufficient evidence.  Pitzner,
103 S.W.3d at 728.  Conversely, more than
a scintilla exists when the evidence "rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions."  Transp. Ins. Co. v. Moriel, 879 S.W.2d
10, 25 (Tex. 1994). 

                                           B.  Factual Sufficiency

Unlike legal
sufficiency challenges, factual sufficiency issues concede that the record
presents conflicting evidence on an issue. 
Maxus, 766 S.W.2d at 275. 
Like legal sufficiency challenges, the standard of review on factual
sufficiency issues depends on the burden of proof at trial.  Id. at 275.  The party attacking a finding on which an
adverse party bore the burden of proof must show that there is
"insufficient evidence" in the record to support the finding.  Gooch, 902 S.W.2d at 184.  In reviewing an insufficient-evidence issue,
we examine and consider all of the evidence, not just the evidence that
supports the verdict, to see whether it supports or undermines the finding.  Maritime Overseas, 971 S.W.2d at
406-07.  We set aside the finding for
factual insufficiency if the "evidence adduced to support the vital fact,
even if it is the only evidence adduced on an issue, is factually too weak
alone to support it."  See
Ritchey v. Crawford, 734 S.W.2d 85, 86-87 n.1 (Tex. App.BHouston
[1st Dist.] 1987, no writ) (quoting Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 366 (1960)).  








In attacking for
factual insufficiency an adverse finding on which it bore the burden of proof
at trial, a party must show the finding is against the "great weight and
preponderance of the evidence."  Maxus,
766 S.W.2d at 275; Ritchey, 734 S.W.2d at 86-87 n.1.  In that event, we set aside a finding so
against the overwhelming weight of the evidence as to be manifestly unjust and
clearly wrong.  Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996) (per curiam). 


C.  Sufficiency of Evidence as to Damages

The trial court's judgment
awarded damages to Valley Wireless in excess of four million dollars.  Evidence
was before the court that Valley Wireless tendered an exclusivity fee of
$10,000 to Hyperoam, and that Valley Wireless expended approximately $10,000 in
infrastructure improvements.  The
judgment also included an award for attorneys' fees.  The bulk of the
damages award was composed of alleged lost profits, the sole evidence for which
was the affidavit of Quintanilla.  

Recovery for lost
profits does not require that the loss be susceptible to exact
calculation.  Helena Chem. Co. v.
Willkins, 47 S.W.3d 486, 504 (Tex. 2001); Tex. Instruments, Inc. v.
Teletron Energy Mgmt., Inc., 877 S.W.2d 276, 279 (Tex. 1994).  However, the injured party must do more than
show that it suffered some lost profits. Teletron, 877 S.W.2d at
279.  At a minimum, opinions or lost‑profit
estimates must be based on objective facts, figures, or data from which the
lost‑profits amount may be ascertained. 
Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994)
(per curiam); Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84
(Tex. 1992).  








In order that a
recovery may be had on account of loss of profits, the amount of the loss must
be shown by competent evidence with reasonable certainty.  Where the business is shown to have been
already established and making a profit at the time when the contract was
breached or the tort committed, such pre‑existing profit, together with
other facts and circumstances, may indicate with reasonable certainty the
amount of profits lost.  It is
permissible to show the amount of business done by the plaintiff in a
corresponding period of time not too remote, and the business during the time
for which recovery is sought. Furthermore, in calculating the plaintiff's loss,
it is proper to consider the normal increase in business which might have been
expected in the light of past development and existing conditions.

 

Teletron, 877 S.W.2d at 279
(emphasis added); see Szczepanik, 883 S.W.2d at 649; Atlas Copco
Tools, Inc. v. Air Power Tool & Hoist, Inc., 131 S.W.3d 203, 205 (Tex.
App.BFort Worth 2004, pet.
denied); VingCard A.S. v. Merrimac Hospitality Sys., Inc., 59 S.W.3d
847, 863 (Tex. App.BFort Worth 2001, no
pet.).  "Reasonable certainty"
is not demonstrated and lost profits are not appropriate where the claimed
losses are largely speculative or a mere hope for success.  Teletron, 877 S.W.2d at 279.

Profits which are
largely speculative, as from an activity dependent on uncertain or changing
market conditions, or on chancy business opportunities, or on promotion of
untested products or entry into unknown or unviable markets, or on the success
of a new and unproven enterprise, cannot be recovered.

 

Teletron, 877 S.W.2d  at 279‑80; VingCard A.S., 59
S.W.3d at 863.  The mere hope for success
of an untried enterprise, even when that hope is realistic, is not enough for
recovery of lost profits.  Teletron, 877
S.W.2d at 279-80. 








Here,
Valley Wireless's business was not established, and there are no pre-existing
profits which may indicate with reasonable certainty the accuracy of Valley
Wireless's projections.  Valley Wireless
does not base its calculations upon contracts already entered into with
customers, and for which the business was lost,[11]
but rather upon anticipated contracts which it asserts would have been signed.  Its calculations also presume that every
customer that indicated an interest, every student at the two universities, and
every employee of the City of Pharr would have signed a contract or been a
component in a contract to generate revenue. 
Moreover, the affidavit reflects nothing more than an unfounded and
speculative assertion that a 25 percent increase in the projected business
within one year is reasonable.  Further,
Valley Wireless incorrectly calculated its projected net profits by measuring
lost gross profits, not lost net profits, as the law requires.  See Heine, 835 S.W.2d 80, 83 n.1
(holding proper measure of damages is lost net profits).[12]

Valley
Wireless's calculation of lost profits was based on speculation and
conjecture.  We find the affidavit
asserting the basis for the alleged lost profits falls short of the legal
requirement that lost profits be proven by competent evidence with reasonable
certainty.  See Atlas Copco Tools,
131 S.W.3d at 209 (citing Schaefer v. Tex. Emp. Ins. Ass'n, 612 S.W.2d
199, 204‑05 (Tex. 1980) ; Naegeli Transp. v. Gulf Electroquip, Inc.,
853 S.W.2d 737, 741 (Tex. App.BHouston [14th Dist.]
1993, writ denied) (opinions which are purely speculative or conjectural in
their nature should be excluded)). 








We
conclude that the trial court erred in granting summary judgment as to damages
because the evidence tendered is factually insufficient to support the entire
damages award.  We sustain the second
portion of Hyperoam's issue on appeal

V.  Conclusion

With
respect to the motion for new trial, we find the standard of Craddock is
inapplicable in the circumstances of this case. 
Hyperoam failed to timely respond to a motion for summary judgment,
despite evidence that it timely received notice.  Hyperoam further failed to avail itself of
any alternatives available under the Texas rules of civil procedure, including
either a request to late-file a response, or a motion for continuance of the
hearing/submission date.  We overrule
Hyperoam's contention that the trial court erred in denying the motion for new
trial.  

With respect to the
substantive challenge to the trial court's granting of summary judgment, we
sustain Hyperoam's issue as to damages, reverse, and, in the interests of
justice, see Tex. R. App. P.
43.3(b), we remand for further proceedings on damages consistent with this
opinion.  

 

ERRLINDA CASTILLO

Justice

 

 

Memorandum Opinion
delivered and filed

this the 18th day of
August, 2005.                                                                              

 











[1] See Tex.
R. App. P. 47.1, 47.4. 





[2] See
Craddock v. Sunshine Bus Lines, Inc., 133 S.W.2d 124, 126 (Tex. 1939).  





[3]
There were eleven deemed admissions, including one acknowledging payment of the
exclusivity fee and others addressing the commission percentages provided for
under the contract.  None of the
admissions addressed other damage issues. 






[4] Also
attached to the motion for summary judgment was an affidavit in support of
attorneys' fees.  





[5]
Itemized expenditures are identified in the affidavit and include those for
printing pamphlets, hiring an accountant, purchasing a computer and a
printer-fax machine, purchasing new office furniture, telephones and a new
telephone service, hiring a receptionist, renting additional office space,
purchasing new business attire, wear and tear to Quintanilla's vehicle from
traveling to Austin to secure necessary business permits and tax documents,
diverting efforts from another job which resulted in loss of pay, and
additional "miscellaneous bills and other necessary office
supplies."  These itemized
expenditures totaled between $9,500 and $10,000.  





[6]
There is no evidence in the record that Valley Wireless secured any signed
contracts with customers for the Hyperoam internet services.  





[7] Total damages, including the
$10,000 exclusivity fee and the $10,000 invested for infrastructure
improvements, were identified as $4,063,052.00. 





[8]
Salas did tender testimony taken in front of a court reporter in support of
Hyperoam's motion for new trial, but the motion itself was taken under
submission and no hearing was held.  





[9]  Attached to Valley Wireless's responses to
the motion for new trial are copies of two letters:  (1) the first (sent November 13, 2003)
included the motion for summary judgment; and (2) the second (sent November 14,
2003) advised of the date of submission, and that any response was due seven
days prior to that date.  Accompanying
each letter is a copy of a green card, bearing the signature of and indicating
receipt of service by Albert Salas or someone on his behalf.  





[10] But
see Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors,
Inc., 960 S.W.2d 41, 48 (Tex. 1998) (holding that legal sufficiency review
is conducted by considering "all the record evidence" in the light
most favorable to the prevailing party, indulging every reasonable inference in
that party's favor).  A unanimous supreme
court, without discussing the analytical construct applied in Formosa
Plastics, "reaffirmed the traditional and historical statement of the
scope of review [w]hen the court stated: '[w]e
emphasize . . . that under a legal-sufficiency review, we
must disregard all evidence and inferences contrary to the jury's
finding.'"  W. Wendell Hall, Standards
of Review in Texas, 34 St. Mary=s L.J. 1, 160 (2002) (quoting Lenz
v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002)). 
We apply the supreme court's most recent analytical construct.  





[11]
Indeed, no such signed contracts are claimed to exist or are in evidence.  





[12]
"Net profits" are defined as "what remains in the conduct of
business after deducting from its total receipts all of the expenses incurred
in carrying on the business."  Atlas Copco Tools, Inc. v. Air Power Tool
& Hoist, Inc., 131 S.W.3d 203, 209 (Tex. App.BFort
Worth 2004, pet. denied).