# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 16, 2020

Lyle W. Cayce
Clerk

No. 20-30278
Summary Calendar

WALTER SKIPPER,

*Plaintiff—Appellant*,

*versus*

A&M DOCKSIDE REPAIR, INCORPORATED,

*Defendant-Third Party Plaintiff—Appellee*,

*versus*

HELIX RESOURCES, L.L.C.,

*Third Party Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-6164

Before KING, SMITH, and WILSON, *Circuit Judges*.

Per Curiam:*

Plaintiff-appellant Walter Skipper appeals the district court's decision granting partial summary judgment in favor of defendants-appellees A&M Dockside Repair ("A&M"), Inc., and Helix Resources, L.L.C. ("Helix"). The district court based its decision on the application of the borrowed servant defense. We AFFIRM.

**I.**

On August 11, 2017, Skipper was working on a barge in one of A&M's shipyards when he allegedly fell into an open manhole cover and suffered severe injuries. At the time of the accident, Skipper was employed by Helix as a painter and blaster. Helix provided Skipper's services to A&M pursuant to a services agreement.

Following the accident, Skipper filed a negligence action against A&M, and A&M then filed a third-party complaint against Helix. After A&M and Helix resolved the dispute between them, they filed a joint motion for partial summary judgment. The district court granted the joint motion on the grounds that "A&M was Skipper's borrowing employer for the purposes of the [Longshore & Harbor Workers' Compensation Act (the "LHWCA")]." If this conclusion holds, compensation and medical payments are Skipper's sole remedy under the LHWCA. *See* 33 U.S.C. § 933(i) ("The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee who is injured . . . by the negligence or wrong of any other person . . . in the same employ."). Skipper filed a timely notice of appeal.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

## II.

We review a district court's order granting summary judgment de novo viewing all facts and evidence in the light most favorable to the non-moving party. *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016). Whether an employee is a borrowed servant is a question of law and, therefore, also reviewed de novo. *See Gaudet v. Exxon Corp.*, 562 F.2d 351, 358 (5th Cir. 1977); *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 314 (5th Cir. 1969). But we review a district court's decision regarding whether a party has waived an affirmative defense for abuse of discretion. *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 & n.8 (5th Cir. 2017).

Skipper makes two arguments why summary judgment was improper. First, Skipper argues that A&M and Helix waived the borrowed servant defense. Second, Skipper argues that even if the defense was not waived, there is a genuine dispute as to material facts that precludes summary judgment. We address each argument in turn.

The district court concluded that the borrowed servant defense was not waived. We agree. Federal Rule of Civil Procedure 8 requires a defendant to "state in short and plain terms its defenses to each claim asserted against it" and "affirmatively state any avoidance or affirmative defense." FED. R. CIV. P. 8(b)(1)(A), (c)(1). Although Skipper is correct that neither A&M nor Helix expressly raised the borrowed servant defense as an affirmative defense in their answers, this failure does not necessarily result in waiver. *See Motion Med.*, 875 F.3d at 772 (observing that we have "repeatedly rejected waiver arguments when a defendant raised an affirmative defense for the first time at summary judgment—or even later"). As we have previously held, "an affirmative defense is not waived if the defendant 'raised the issue at a pragmatically sufficient time and [the plaintiff] was not prejudiced in its

ability to respond.'" *Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983)).

In this case, the district court concluded that Skipper had reasonable notice and was not prejudiced by the district court's consideration of the borrowed servant defense at the summary judgment stage. First, the district court observed that Helix made various assertions in its answer that implicated the borrowed servant defense. For example, Helix asserted that Skipper was on a "mission" for Helix and had "no right to seek tort remedies from Helix, nor any other party to attempt to pass through alleged fault to Helix as no Helix employees or supervisors were present at the time of the incident and Helix relinquished control, supervision, and direction to A&M." Additionally, Helix asserted that Skipper's sole remedy was for compensation under the Louisiana Worker's Compensation Act or, alternatively, the LHWCA.[1] Second, the borrowed servant defense was raised explicitly in a partial summary judgment motion filed months before trial. Third, Skipper made thorough and reasoned responses to the arguments that A&M was Skipper's borrowing employer and made no argument that he needed additional discovery on this issue. Therefore, the district court did not abuse its discretion in concluding that the defense was not waived.

Next, Skipper argues that there remains a genuine dispute as to material facts as to whether A&M was acting as his borrowing employer. In *Ruiz v. Shell Oil*, we set out nine factors relevant to whether the borrowed servant defense applies. No one factor is dispositive. *See Brown v. Union Oil*

---

[1] Skipper's argument that these assertions did not put him on notice of the borrowed servant defense because they were raised in Helix's answer to A&M's third-party complaint is unavailing. To be sure, as the district court correctly observed, Helix's answer is part of the record in this case.

No. 20-30278

*Co. of Ca.*, 984 F.2d 674, 676 (5th Cir. 1993). Skipper argues that there is a genuine dispute as to material fact regarding four of the nine factors and that two of the factors are neutral. We address each of the nine factors in turn.

(1) Who has control?

This inquiry focuses on whether A&M or Helix exerted greater control over Skipper. Skipper argues that because a trier of fact could conclude that he was acting in cooperation with A&M employees rather than in subordination to their directions, there is a genuine dispute as to material fact regarding control that precludes summary judgment. But Skipper's own testimony refutes this argument. Specifically, Skipper established that he followed the directions of A&M's yard superintendent, referring to A&M as the "boss." Additionally, the yard superintendent testified that Skipper's only supervisors were A&M foremen and that he directed Skipper's work. Indeed, Helix did not have *any* supervisors at the jobsite. Skipper also argues that his status as an independent contractor per the terms of the services agreement between A&M and Helix, creates a genuine dispute as to material fact regarding control. This argument is meritless. In fact, we have previously upheld the application of the borrowed servant defense despite this type of clause. *See, e.g.*, *Gaudet*, 562 F.2d at 358 (observing that the "trial court could have concluded that the test for borrowed employee status was met regardless of the ultimate resolution of the factual matter of the agreement between the employers"). Therefore, we find that this factor favors borrowed servant status.

(2) Whose work is being performed?

This inquiry focuses on whether Skipper was performing A&M's or Helix's work. Skipper argues that there is a genuine dispute as to material fact regarding whose work was being performed. He argues that he was only incidentally performing A&M's work and instead performing Helix's work,

whose business as a temporary labor company is the hiring out of personnel. Skipper's argument is meritless. The yard superintendent testified that Skipper repaired and cleaned the barge for A&M. In other words, Skipper performed A&M's work. To that end, Skipper's reliance on cases where a contracted laborer was performing ancillary work is misplaced. In this case, it is clear that Helix hired out its employees to do A&M's work. Therefore, we find that this factor favors borrowed servant status.

(3) Was there an agreement or understanding between Helix and A&M?

Skipper argues that there is a genuine dispute as to material fact regarding this factor in light of the independent contractor clause in the agreement between Helix and A&M. Specifically, the agreement provides that Skipper "shall at all times be deemed an independent contractor and the relationship of these parties to [A&M] shall not at any time constitute any relationship other than that of independent contractor." First, no one disputes the existence of this clause, and second, as discussed above, we have previously found borrowed servant status despite the presence of this type of clause. *See Gaudet*, 562 F.2d at 358. Although this clause weighs in Skipper's favor, there is no genuine dispute as to any material fact regarding this factor. Therefore, this factor does not compel a denial of summary judgment.

(4) Did Skipper acquiesce in the new work situation?

This factor focuses on whether the employee agreed to the work arrangement. There is no evidence that Skipper took issue with working for A&M, and in any event, he does not argue that there is a genuine dispute as to any material fact regarding this factor. We find that this factor favors borrowed servant status.

(5) Did Helix terminate its relationship with Skipper?

No. 20-30278

Skipper argues that this factor should have weighed against the borrowed servant defense or have been considered as neutral because there is no evidence that Helix terminated its relationship with him. Skipper mischaracterizes the focus of this inquiry. Specifically, this inquiry focuses on whether Skipper maintained contact with Helix and not whether his actual employment relationship was severed. *See Hotard v. Devon Energy Prod. Co. L.P.*, 308 F. App'x 739, 742 (5th Cir. 2009) (citing *Amoco Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1246 (5th Cir. 1988)). To that end, Skipper offers no evidence to show that he was in communication with or supervised by Helix employees. In fact, the evidence cuts against Skipper's position given his testimony and the yard superintendent's testimony that there were no Helix supervisors at the jobsite. Therefore, we find that this factor favors borrowed servant status.

(6) Who furnished the tools and place for performance?

Skipper does not make arguments about this factor. In any case, the majority of the tools were provided by A&M, and the place of performance was A&M's shipyard. We find that this factor favors borrowed servant status.

(7) Was the new employment over a considerable length of time?

There is no dispute that Skipper worked for A&M for six days. Skipper argues that this factor should have weighed against the borrowed servant defense or have been considered as neutral. The district court did, in fact, consider this factor to be neutral. We agree with the district court. Indeed, we have previously found that this factor is "significant only when the [borrowing] employer employs the employee for a considerable length of time," but where an employee is injured early in the employment, the factor is neutral. *See Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 618 (5th Cir. 1986). Therefore, we find this factor to be neutral.

(8) Who had the right to discharge Skipper?

This inquiry focuses not on which entity had the power to terminate Skipper's employment outright but simply whether A&M had the authority to terminate Skipper's services with A&M. *See Capps*, 784 F.2d at 618 (explaining that the proper focus of the inquiry is whether the borrowing employer has the "right to terminate [the borrowed employee's] services with itself"). Skipper does not make arguments about this factor. In any case, A&M had the right to discharge Skipper from the jobsite and request a new worker. Therefore, we find that this factor favors borrowed servant status.

(9) Who had the obligation to pay the employee?

Skipper argues that there is a genuine dispute as to material fact regarding this factor. He is incorrect. A&M paid Helix, which in turn paid Skipper, in effect, out of the funds from A&M. When the funds used to pay the employee are received from the entity the employee is contracted out to, we have held that that entity, in effect, pays the employee. *See id*. Therefore, we conclude that this factor weighs in favor of borrowed servant status.

Despite Skipper's arguments to the contrary, there is no genuine dispute as to any material fact, and the district could determine that A&M was Skipper's borrowing employer. Because seven of the nine borrowed servant factors favor borrowed servant status, we conclude that Skipper was a borrowed employee and A&M his borrowing employer. Therefore, A&M and Helix were entitled to partial summary judgment.

## III.

For the foregoing reasons, the decision of the district court is AFFIRMED.